NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 07-2137
_____

IMEH I. JONES,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A90-668-783)
Immigration Judge:  Hon. Walter A. Durling
_____

Argued April 13, 2010

Before:  SLOVITER and NYGAARD, Circuit Judges, and RESTANI[*], Judge

(Filed:  October 18, 2010)
_____

Alexander J. Urbelis (Argued)
Justin B. Perri
Michael D. Rips
Steptoe & Johnson
New York, NY 10019

        Attorneys for Petitioner

_____

        [*]  Hon. Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

R. Alexander Goring   (Argued)
Peter D. Keisler
Jeffrey J. Bernstein
Gregory G. Katsas
Tony West
Richard M. Evans
Thomas W. Hussey
Michelle G. Latour
Virginia M. Lum
United States Department of Justice
Office of Immigration Litigation, Civil Division
Washington, D.C. 20044

     Attorneys for Respondent

---

OPINION

---

SLOVITER, *Circuit Judge*.

Imeh I. Jones has filed a petition for review of a final order of removal of the

Board of Immigration Appeals ("BIA"). We must decide whether the BIA applied the

appropriate standard of review of the decision of the Immigration Judge ("IJ") in light of

our recent decision in *Kaplun v. Att'y Gen.*, 602 F.3d 260 (3d Cir. 2010).

**I.**

Jones, a native and citizen of Nigeria, entered the United States in 1981 as a

nonimmigrant. He adjusted his status to that of a lawful permanent resident in 1992.

Since arriving in this country, Jones earned a Ph.D in economics, became Chief Financial

Officer of the Washington D.C. Department of Health and raised three children. Jones

brought his mother to the United States from Nigeria to be treated for cancer. According to Jones, he "ran up a substantial amount of debt in trying to pay for the medical needs of his mother." Pet'r's Supplemental Br. at 3. In order to pay his debts, Jones stole money from the New York City Department of Health and Mental Hygiene over the course of three years and ultimately pled guilty to four counts of "Theft Concerning a Program Receiving Federal Funds" in violation of 18 U.S.C. § 666(a)(1)(A). A.R. at 575.

The Department of Homeland Security ("DHS") commenced removal proceedings against Jones on October 26, 2005, charging Jones with removability pursuant to the Immigration and Nationality Act ("INA" or "the Act") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for being convicted of an aggravated felony. The IJ found Jones removable, but granted his application for withholding of removal under the Convention Against Torture ("CAT"), and alternatively granted Jones deferral of removal under the CAT in the event that Jones was found statutorily ineligible for withholding on appeal.

Jones and DHS both appealed to the BIA, which vacated the IJ's decision with regard to both bases for CAT protection. Specifically, the BIA found Jones statutorily ineligible for withholding of removal under the CAT for having been convicted of a particularly serious crime. The BIA also vacated the decision of the IJ with regard to deferral of removal under the CAT, finding that there was "insufficient evidence" to support the IJ's determination that Jones would more likely than not be detained and tortured if returned to Nigeria. This petition for review followed.

3

**II.**

This court has jurisdiction to review final orders of removal under INA § 242, 8 U.S.C. § 1252, *amended by* REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 305 (2005). Because Jones was convicted of an aggravated felony as defined under the Act, our review is limited to "constitutional claims or questions of law . . . ." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

Following oral argument, this court directed the parties to submit contemporaneous memoranda as to the effect of our recent decision in *Kaplun v. Att'y Gen.*, 602 F.3d 260 (3d Cir. 2010).[1] In *Kaplun*, we held that when the BIA reviews an IJ's determination regarding whether torture is likely if an alien is removed to his or her country of origin, as is the case here, it must examine separately the "two distinct parts to the mixed question . . . ." *Id.* at 271. The two parts are: (1) what is likely to happen to the petitioner if removed, a factual question subject to clear error review by the BIA; and (2) whether what is likely to happen rises to the level of torture, a legal question reviewed de novo by the BIA. *Id.*

Jones argues that *Kaplun* compels a reversal of the BIA decision because the BIA did not review for clear error the factual question of what was likely to happen to Jones upon deportation, instead using terms like "no substantial basis in the record," "no

---

[1] This court granted the Government's motion to hold this case in abeyance while the Government sought rehearing in *Kaplun*. The petition for rehearing was denied and the mandate issued on August 4, 2010. As such, the Government agrees that disposition is now appropriate.

persuasive evidence," and "unsubstantiated" without clearly setting forth the standard. Pet'r's Mem. of Law with Respect to *Kaplun,* at 2. Jones argues that the BIA conflated the two separate inquiries delineated in *Kaplun* and supplanted its own judgment rather than deferring to the IJ. He asserts further that the BIA mischaracterized evidence in the record; namely, Jones' testimony regarding whether the Nigerian authorities were aware of his convictions in the United States. Although not binding on this court's reading of the BIA decision, Jones also argues that the Government has conceded that the BIA engaged in a de novo review of the IJ's factual findings, relying on the now overruled precedent *Matter of V-K-*, 24 I. & N. Dec. 500 (BIA 2008).

The Government argues that *Kaplun* does not alter the ultimate conclusion because even if the BIA applied what is now the incorrect standard of review, Jones failed to established a likelihood of detention and torture on the record before the agency under either standard. The IJ relied on several factors in determining that Jones was likely to be detained and tortured upon his arrival in Nigeria, including evidence that Jones was convicted of a crime in the United States, that foreign crimes are held prosecutable offenses under Nigerian law, and that there is a widespread use of torture in Nigeria to gain confessions of those accused of crimes. In light of the record before the BIA and the IJ's detailed opinion, we will remand to the BIA so that it can apply the proper standard of review. In doing so, it must explain why the IJ's decision was clearly erroneous on the facts or erred as a matter of law, if it so holds. Because we do not address the underlying

5

facts in this case, we need not address the new evidence presented by Jones; we leave that issue to the BIA on remand.

The Government argues that a remand would be futile in light of this court's decision in *Auguste v. Ridge*, 395 F.3d 123 (3d Cir. 2005). Jones counters that *Auguste* is inapposite because *Auguste* held that deplorable prison conditions alone do not rise to the level of torture whereas here Jones argued that he would be subjected to torture by prison officials for the purpose of extracting a confession. We agree that the *Auguste* decision is inapplicable. Moreover, the BIA did not decide whether what would happen to Jones if he were detained in Nigeria rises to the level of torture because it found, employing a now incorrect standard of review, that it was unlikely that Jones would be detained at all.

Because the BIA applied the incorrect standard of review with respect to the likelihood of torture, relevant to both bases for CAT protection, we need not resolve whether Jones' conviction constitutes a particularly serious crime rendering him ineligible for CAT withholding.

**III.**

For the reasons set forth, we remand this matter to the Board of Immigration Appeals for reconsideration in light of this court's decision in *Kaplun v. Att'y Gen.*, 602 F.3d 260 (3d Cir. 2010).